IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**MARVIN MILLS,**

       **Plaintiff,**

v.                                                              Case No. 2:12-cv-02873

**GLEN MCGARRY, et al.,**

       **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

On July 10, 2012, the plaintiff, Marvin Mills, WVDOC # 27423, an inmate incarcerated at the Mount Olive Correctional Complex ("MOCC"), filed a Motion for Emergency Preliminary Injunction and a Memorandum of Law in support thereof. (ECF Nos. 1 and 2.) The Clerk's Office mailed the plaintiff forms for filing a Complaint under 42 U.S.C. § 1983. (ECF No. 5.) On July 23, 2012, the plaintiff filed a Complaint under 42 U.S.C. § 1983. (ECF No. 8.) Also pending is the plaintiff's Application to Proceed Without Prepayment of Fees and Costs. (ECF No. 11.)

## THE PLAINTIFF'S ALLEGATIONS

The plaintiff's documents allege that the plaintiff, who is a practicing Hare Krishna, has been provided a vegetarian diet in accordance with his religious beliefs, but has now, for medical reasons, been prescribed a renal diet, which mandates "restricted protein, sodium, potassium and with an emphasis on 1,500 mg sodium (in 24 hour period). Also a vegetable variety pack twice daily." (ECF No. 8 at 12, ¶ 19.) The plaintiff further alleges that "Aramark Food Service standard renal diet serves the following:

'fish, meat, fowl, and eggs.' All of these foods are forbidden to adherents of the Hare Krishna religious beliefs." (*Id.* at 13, ¶ 21.) Consequently, the plaintiff alleges that the defendants, all of whom are or were employees of Aramark Food Service at MOCC, are forcing him to choose between the renal diet and his religious practices, and have refused to provide an alternate diet that could satisfy both the plaintiff's medical and religious needs. (*Id.*, ¶ 22.) The plaintiff further alleges that his health is in great jeopardy because he refuses to eat foods that violate his religious beliefs. (ECF No. 1 at 1.)

The plaintiff alleges that the conduct of the defendants has violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-a(b)(1), as well as his rights under the First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution. The plaintiff further asserts violations of West Virginia Code §§ 56-1-1, 51-2-2 and 14-2-2, over which he contends this federal court may assert pendant jurisdiction.[1] In addition to the preliminary injunction sought in the initial motion, the plaintiff seeks declaratory and permanent injunctive relief to prevent the alleged continual burden on the practice of his religion. (*Id.* at 14-15.)

## STANDARD OF REVIEW

Included in the relief that the plaintiff seeks is a preliminary injunction enjoining the defendants from substantially burdening his religious exercise, and to provide him with a proper diet that comports with both his religious beliefs and his medical needs. In 2009, the United States Court of Appeals for the Fourth Circuit revisited the applicable standard of review for preliminary injunctions in the case of *The Real Truth*

---

[1] These state statutes concern jurisdiction and venue of the state circuit courts and do not convey any substantive rights which could have been violated.

2

*About Obama*, 575 F.3d 342 (4th Cir. 2009) (hereinafter "*Real Truth*"), in light of the Supreme Court's decision in *Winter v. Natural Resources Defense Counsel, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed.2d 249 (2008). As noted by the *Real Truth* Court:

> A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003); *see also De Beers Consol. Mines, Ltd. V. United States*, 325 U.S. 212, 220-21, 65 S. Ct. 1130, 80 L. Ed. 1566 (1945). Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial. *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997)(per curiam). * * *
>
> In its recent opinion in *Winter*, the Supreme Court articulated clearly what must be shown to obtain a preliminary injunction, stating that the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 129 S. Ct. at 374. And all four requirements must be satisfied. *Id.* Indeed, the Court in *Winter* rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76.

575 F.3d 345-46.

The *Real Truth* decision emphasizes that "the *Winter* requirement that the plaintiff clearly demonstrate that [he] will likely succeed on the merits is far stricter than the [*Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977)] requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." *Id.* at 346-47. The *Real Truth* further distinguishes the *Winter* standard from the old *Blackwelder* standard because it no longer requires the court to balance the harm to the respective parties, but rather requires the plaintiff to make a

3

clear showing that he is likely to be irreparably harmed, and that the court must pay particular attention to the public consequences in employing the extraordinary remedy of an injunction. The Court again emphasized that all four factors must be met in order to justify this extraordinary relief. *Id.* at 347. Thus, the Court stated that the standard articulated in *Winter* would henceforth govern the issuance of preliminary injunctions in the all federal courts. *Id.*[2]

The undersigned will address the plaintiff's allegations to determine whether they state a claim upon which relief may be granted under the applicable constitutional and statutory authority, and to determine whether the plaintiff is entitled to preliminary injunctive relief.

## ANALYSIS

### A. The plaintiff's First Amendment claim.

Adherence to religiously-mandated dietary restrictions is a practice protected by the First Amendment, and a prisoner may allege a violation of his First Amendment rights where he is forced to choose between receiving adequate nutrition, by eating foods that are prohibited by the dictates of his religion, and observance of his faith. *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990). Under the Free Exercise Clause of the First Amendment to the United States Constitution, made applicable to the states under the Fourteenth Amendment, a prisoner's right to practice his or her religion may only be restricted upon the showing that such restriction is reasonably related to a legitimate penological interest. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *Turner v. Safley*, 482 U.S. 78, 84 (1987). "This approach ensures the ability of

---

[2] The undersigned notes that the plaintiff relies upon the *Blackwelder* standard in his Motion for a Preliminary Injunction and Memorandum in support thereof. (ECF Nos. 1 and 2.)

4

corrections officers 'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration' [citation omitted] and avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to 'resolution by decree.'" *O'Lone*, 482 at 349-350 (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). Federal courts are counseled to exercise judicial restraint in matters of prison administration. *Turner*, 482 U.S. at 89. Thus, a First Amendment claim turns on the reasonableness of the restriction, and allows the court to consider whether there are ready alternatives to accommodate the prisoner's religious rights. *Id.* at 90-91.

As noted by the Supreme Court in Turner:

[S]everal factors are relevant in determining the reasonableness of the regulation at issue. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Block v. Rutherford*, [468 U.S. 576, 586 (1984).] Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. Moreover, the governmental objective must be a legitimate and neutral one. We have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression. *See Pell v. Procunier*, [417 U.S. 817, 827 (1974);] *Bell v. Wolfish,* [441 U.S. 520, 551 (1979).]

A second factor relevant in determining the reasonableness of a prison restriction, as *Pell* shows, is whether there are alternative means of exercising the right that remain open to prison inmates. Where "other avenues" remain available for the exercise of the asserted right, *see Jones v. North Carolina Prisoners' Union*, [433 U.S. 119, 132-133 (1977), courts should be particularly conscious of the "measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." *Pell v. Procunier, supra*, 417 U.S., at 827, 94 S. Ct., at 2806.

A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. In the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order. When accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or on

5

> prison staff, courts should be particularly deferential to the informed discretion of corrections officials. [Citation omitted.]
>
> Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. *See Block v. Rutherford, supra,* 468 U.S., at 587, 104 S. Ct., at 3233. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns. This is not a "least restrictive alternative" test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. *See ibid.* But if an inmate claimant can point to an alternative that fully accommodates the prisoner's right at *de minimus* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

482 U.S. at 90-91. Factors that courts have taken into consideration when determining the reasonableness of prison dietary restrictions include simplified food service, security and budget. *See, e.g., Williams v. Morton*, 343 F.3d 212 (3d Cir. 2003).

Taking the allegations in the plaintiff's Complaint as true, and in the light most favorable to the plaintiff, the service of the medically-ordered renal diet, which contains "fish, meat, fowl, and eggs," does restrict the plaintiff's right to practice his religion, whose adherents eat a vegetarian diet, by placing the plaintiff in a position where he must either eat prohibited foods in order to receive adequate nutrition, or observe his faith and jeopardize his health. Thus, the court must determine whether the restriction of the plaintiff's diet is reasonably related to a legitimate penological interest.

A status conference was held in this matter on August 1, 2012. Although service of process has not yet been ordered, defendant Glen McGarry appeared at the status conference, with counsel, Jenna E. Hess, of the law firm of Nelson Mullins Riley & Scarborough LLP.

During the status conference, the plaintiff explained that the renal diet prescribed by the medical staff limits his intake of protein. The plaintiff further stated that,

depending on how the food is prepared, he can eat 99% of the food offered in the vegetarian diet provided by Aramark that is provided to the Hare Krishna inmates. However, the plaintiff contends that the vegetarian diet is high in potassium and has certain products that conflict with his medical needs. The plaintiff further asserts that he cannot just avoid eating the foods that are problematic to his medical conditions because he will not receive a balanced diet.

Ms. Hess explained on the record that, as the contracted food service provider for the West Virginia Division of Corrections, Aramark must follow the orders provided by the prison's medical and religious staff pursuant to the contract. Thus, they must provide meals in accordance with the orders given to them. However, the plaintiff may decline the medical diet and request continuation of his religious diet as authorized by the religious services coordinator, but Aramark may not simply make special provisions or substitutions for individual inmates. The plaintiff took issue with this assertion, claiming that Aramark does make special provisions, including for Hare Krishna inmates who have medical needs.

The undersigned has reviewed Aramark's Medical Nutrition Therapy and Religious Meals Manual (hereinafter "the Manual"), which governs the provision of meals in the correctional facilities with which Aramark has contracted to provide food services. The undersigned notes that page 14 of the Manual provides procedures for non-standard diet orders. This provision appears to allow for the crafting and approval of non-standard medical or religious diets by Aramark's Regional Dietitian. (Attached as Ex. A at 14.) The undersigned further notes that, on page 11, in a section discussing Religious Diet Orders, the Manual sets forth that "legitimate individual religious interests will be served without sacrificing the facility's legitimate penological interests

7

in orderly meal serving, and fair and consistent treatment among residents." (*Id.* at 11.) The Manual further provides that exceptions may be made at the discretion of the facility's religious authority or other authorized person. (*Id.*)

Finally, on page 54 of the Manual, which details the "Total Vegetarian (Vegan) Religious Diet, states, "When a medical diet need (such as diabetes or renal disease) also exists, the medical diet order will take precedence in order to ensure the medical needs of the individual are met." (Attach. A at 54.)

The plaintiff was told on the record that, because Aramark is obligated to follow the medical diet order that was issued by the medical staff on June 21, 2012, the plaintiff would have to decline the medical diet before any other potential changes to his diet could be explored. The plaintiff had not done so at the time of the status conference. It would appear that, under the policies and procedures set forth in the Manual, the plaintiff could request that the Regional Dietitian work with the medical staff and the religious services coordinator to approve a non-standard diet order that would comport with the plaintiff's religious beliefs and his medical needs. This procedure appears to be a ready alternative to accommodate the plaintiff's religious rights that will not have an unreasonable impact on the legitimate penological interests of orderly and cost-effective food service, prison security, and the fair and consistent treatment of inmates.

Because there appears to be a reasonable alternative to accommodate the plaintiff's religious rights, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted under the First Amendment's Free Exercise Clause, and the plaintiff is not entitled to preliminary or permanent injunctive relief, or any other relief on this claim.

### B. The plaintiff's RLUIPA claim.

In 2000, Congress enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a)(1)-(2). Section 3 of RLUIPA governs restrictions on religious exercise by institutionalized individuals by state or local governments. RLUIPA provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The Act defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). A "substantial burden on the religious exercise of a person" "'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs,' or . . . forces a person to 'choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand.'" *Smith v. Ozmint*, 578 F.3d 246 (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)). Again quoting from *Lovelace*, the *Smith* decision noted that courts may "not judge the significance of the particular belief or practice in question." *Lovelace,* 472 F.3d at 187 n.2. *Id.*

A prisoner's rights under RLUIPA are more expansive than those under the First Amendment. *See Lovelace*, 472 F.3d at 199-200. RLUIPA "affords to prison inmates a heightened protection from government-imposed burdens, by requiring that the government demonstrate that the substantial burden on the prisoner's religious exercise is justified by a compelling, rather than merely a legitimate, governmental interest."

9

*Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007) (internal quotation marks omitted), *abrogated on other grounds by Sossamon v. Texas*, ___ U.S. ___, 131 S. Ct. 1651, 179 L. Ed.2d 700 (2011). The Supreme Court has noted, however, that "[w]e do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). Furthermore, the legislative history of the Act demonstrates that lawmakers "were mindful of the urgency of discipline, order, safety, and security in penal institutions." *Id.* at 723 (citing the remarks of Sen. Hatch, 139 Cong. Rec. 26190 (1993)). The Supreme Court further noted that the drafters of the Act "anticipated that courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline, consistent with consideration of costs and limited resources." *Id.* (Joint Statement 16699 (quoting S. Rep. No. 103-111 at 10, U.S. Code Cong. & Admin. News 1993, pp. 1892, 1899, 1900.))

The plaintiff's Complaint states that he is suing the defendants in both their official and individual capacities. Under RLUIPA, the plaintiff is prohibited from pursuing monetary damages from any of the defendants in their official capacities. *See Sossamon v. Texas*, ___ U.S. ___, 131 S. Ct. 1651, 179 L. Ed.2d 700 (2011); *Madison v. Virginia*, 474 F.3d 118, 133 (4th Cir. 2006). Furthermore, in *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009), the Fourth Circuit held that a prisoner cannot rely on RLUIPA's spending clause basis to pursue a claim for individual capacity damages. Thus, the plaintiff is limited to seeking injunctive relief on a RLUIPA claim.

Presuming, once again, that the plaintiff can establish that the failure to provide him with food trays that comport with both his religious tenants and his medical needs substantially burdens the plaintiff's religious exercise, the defendants have asserted that it is unduly onerous to the regular operations of a maximum security prison, housing 1069 inmates, to provide individual accommodations to the food service provided to inmates, when the established special diets, for the most part, comport with the dietary restrictions required for the plaintiff to exercise his religious rights.

The undersigned has previously discussed Aramark's procedures for requesting a non-standard diet. The undersigned proposes that the presiding District Judge **FIND** that the priority of ensuring that the medical needs of an inmate are properly met is a compelling governmental interest that justifies the placement of the described substantial burden on the plaintiff's religious exercise. However, the undersigned further proposes that the presiding District Judge **FIND** that the procedures for requesting a non-standard diet provides the least restrictive means to achieve the government's compelling state interest.

The undersigned further proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim under the RLUIPA, and that the plaintiff is not entitled to preliminary or permanent injunctive relief on this claim.

### C. The plaintiff's Complaint fails to state a claim under the Eighth Amendment.

The plaintiff's Complaint and motion for injunctive relief make a blanket statement that the conduct of the defendants has violated his rights under the Eighth Amendment. (ECF No. 1 at 2; ECF No. 8 at 14.) The Complaint and motion do not elaborate on this allegation.

In 1976, the Supreme Court set the standard for evaluating whether a prisoner's Eighth Amendment right to be free from cruel and unusual punishment was violated based upon a prison healthcare provider's deliberate indifference (subjective component) to the prisoner's serious medical needs (objective component). *Estelle v. Gamble*, 429 U.S. 97 (1976); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Addressing the objective component first, "serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1976)).

The subjective component of "deliberate indifference" sets a high bar to recovery. In *Iko*, a case involving excessive use of pepper spray by correctional officers, the Fourth Circuit wrote:

> An officer is deliberately indifferent only when he "knows of and disregards" the risk posed by the serious medical needs of the inmate. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). ***
>
> This court has identified two slightly different aspects of an official's state of mind that must be shown in order to satisfy the subjective component in this context. First, *actual knowledge of the risk of harm* to the inmate is required. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officer [] *should* have recognized it."). Beyond such knowledge, however, the officer must *also* have "recognized that *his actions were insufficient"* to mitigate the risk of harm to the inmate arising from his medical needs. *Parrish*, 372 F.3d at 303 (emphasis added).

535 F.3d at 241.

Taking the plaintiff's allegations as true, and in the light most favorable to the plaintiff, at most, the plaintiff has alleged that he has been placed on a diet that restricts

certain products that may be harmful to the plaintiff's health, but conflicts with his religious beliefs. These allegations fail to demonstrate that any of the defendants have been deliberately indifferent to a serious medical need of the plaintiff. The plaintiff's allegations are conclusory and unsupported. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief may be granted under the Eighth Amendment.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the plaintiff's Complaint (ECF No. 8), pursuant to 28 U.S.C. § 1915A, for failure to state a claim upon which relief may be granted, and **DENY** the plaintiff's Motion for Emergency Preliminary Injunction (ECF No. 1).

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the district court and a waiver of appellate review by the circuit court of appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474

Case 2:12-cv-02873   Document 17   Filed 12/11/12   Page 14 of 14 PageID #: 105

U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on Chief Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to the plaintiff and to transmit a copy to attorney Jenna E. Hess of the law firm of Nelson Mullins Riley & Scarborough LLP.

December 11, 2012

Mary E. Stanley
United States Magistrate Judge